

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 26, 2016**

United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Olympic 1401 Elm Associates, LLC, | § | Case No. 16-30130-hdh |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

### MEMORANDUM OPINION AUTHORIZING
### STRUCTURED DISMISSAL OF DEBTOR'S CHAPTER 11 CASE
### UNDER BANKRUPTCY CODE SECTIONS 105(a), 305(a), AND 1112(b)

This case presents the issue of the propriety of the "structured dismissal" in the place of the more conventional plan confirmation process to complete a Chapter 11 case. Finding that a structured dismissal is contemplated by the Bankruptcy Code and may at times be a better mechanism to conclude a reorganization case, the Court will approve the Debtor's request.

On June 22, 2016, this Court held a hearing on the *Motion for Entry of an Order Pursuant to Sections 105(a), 305(a), and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017 Authorizing Dismissal of the Debtor's Chapter 11 Case* [Docket No. 115] (the "Motion") filed by Olympic 1401 Elm Associates, LLC (the "Debtor"). In the Motion, the Debtor sought to minimize unnecessary administrative expenses and ensure an expeditious and orderly conclusion to the bankruptcy case through a structured dismissal that would provide all creditors with a full recovery on their claims. The Motion was agreed to by all parties except for the United States Trustee (the "Trustee"), who filed a limited objection.[1] The Trustee objected to the Motion because (1) the Debtor sought to waive the statutory requirement that the Debtor's professionals file applications with the Court for approval of fees, (2) the dismissal would not reinstate the creditors' state law remedies, and (3) the Motion did not set a timeframe and require a certification for paying creditors. Before the hearing on the Motion, the parties agreed that there would be a deadline for the payment of creditors and a requirement that the Debtor file a certification stating that all creditors had been paid. The parties also agreed that, to the extent any creditors were not paid in full, they would retain their state law rights with regard to their claims. After considering the pleadings, evidence, and arguments of counsel, the Court determined that the Motion should be granted. On June 23, 2016, the Court entered an order memorializing this ruling.[2] The Court now issues this memorandum opinion to explain its reasons for granting the Motion.

## I. Relevant Factual Background

This bankruptcy case involved the Debtor's sole substantial asset—a commercial building located in downtown Dallas, Texas at 1401 Elm Street (the "Property"). On January 5, 2016,

---

[1] *Limited Objection of the United States Trustee to Debtor's Motion to Authorize Dismissal* [Docket No. 133].

[2] *Order Pursuant to Sections 105(a), 305(a), and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017 Authorizing Dismissal of the Debtor's Chapter 11 Case* [Docket No. 134] (the "Dismissal Order").

Turner Construction Company filed an involuntary Chapter 7 bankruptcy petition against the Debtor in this Court.[3] The Debtor filed its answer, consenting to the entry of an order for relief, subject to an order allowing the Debtor to convert the Chapter 7 bankruptcy case to a Chapter 11 case.[4] This Court entered an order for relief[5] and an order converting the case to a case under Chapter 11[6] on February 3, 2016.

Even before the Court entered the order for relief and converted the case, the Debtor filed a motion to sell the Property pursuant to section 363 (the "Sale Motion")[7] on February 1, 2016. The Court entered an order approving the sale (the "Sale Order")[8] on March 1, 2016. The Property was subsequently sold pursuant to the Sale Order for $65,000,000, which provided sufficient proceeds to pay all allowed claims in full, with funds left over to pay two additional insider claims *pro rata*.[9]

On May 26, 2016, the Debtor filed the Motion seeking dismissal of the bankruptcy case. The Motion stated that the proceeds from the sale of the Property would fund the payment of all allowed claims and was agreed upon by all parties, except for the Trustee who filed an objection. The Debtor subsequently agreed to comply with the Trustee's demand that the Dismissal Order include a deadline and certification for payment of claims and that all creditors retain their rights and remedies under state law to the extent that they were not paid in full. On June 23, 2016, the Court issued the Dismissal Order, dismissing the Debtor's bankruptcy case without prejudice.

---

[3] Docket No. 1.

[4] Docket No. 14.

[5] Docket No. 32.

[6] Docket No. 31.

[7] Docket No. 24.

[8] Docket No. 80.

[9] *See* Docket No. 117.

## II. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Legal Analysis

In deciding the Motion, this Court was faced with two issues: (1) whether the Court has the authority under the Bankruptcy Code to grant the structured dismissal of a Chapter 11 bankruptcy case; and (2) whether the structured dismissal proposed by the Motion, as subsequently modified with the Debtor's consent, was fair and equitable.

**A. The Court has the authority to grant a Chapter 11 structured dismissal.**

The Court has the authority to grant a Chapter 11 structured dismissal pursuant to sections 105(a), 305(a), and 1112(b) of the Bankruptcy Code. Section 1112(b) lays the groundwork for a structured dismissal in a Chapter 11 case. Section 105(a) provides the Court with a very broad power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Section 305(a) provides the Court the discretion to "dismiss a case . . . if the interests of creditors and the debtor would be better served" by a dismissal. Specific to Chapter 11 bankruptcy cases, section 1112(b)(1) allows the Court to convert or dismiss a Chapter 11 case, "whichever is in the best interests of creditors and the estate." *In re Biolitec, Inc.*, 528 B.R. 261, 267 (Bankr. D. N.J. 2014).

**B. The terms of the Dismissal Order are fair and equitable.**

As previously held by this Court, in determining whether to grant a structured dismissal, the Court considers whether the terms of dismissal: (1) are fair and equitable to all creditors generally; (2) do not rise to the level of a *sub rosa* plan; and (3) do not violate the absolute priority

rule. *In re Buffet Partners, L.P.*, No. 14-30699, 2014 WL 3735804, at *3 (Bankr. N.D. Tex. July 28, 2014). Although these three issues are addressed separately below, the Court notes that they all collapse into a "fair and equitable" inquiry, as no dismissal that constitutes a *sub rosa* plan or violates the absolute priority rule treats all creditors fairly and equitably.

The Court recognizes that a structured dismissal of a Chapter 11 bankruptcy case may not accommodate every interest in a bankruptcy, but nevertheless, must be fair and equitable to all creditors. Here, dismissal would provide for full protection of every creditor with an allowed claim. Under the terms of the Motion, the net proceeds from the sale of the Property were sufficient to pay all allowed claims in full. No creditor objected to the Motion, despite receiving adequate notice and opportunity to object. The Trustee, not a creditor,[10] objected on the basis that any dismissal should incorporate fee application requirements, a timeframe and certification for implementation, and the reservation of state law remedies. As to the fee applications, it was in the best interest of creditors for the Court to excuse the Debtor and its attorneys from filing formal applications, as the fees were reduced and agreed upon by the Trustee, and therefore, applications would only unnecessarily increase administrative claims to the detriment of general unsecured creditors. The Debtor consented to a timeframe and certification requirement for payment of claims in the Dismissal Order. Finally, no creditor was prejudiced by the loss of its state law remedies as these remedies were preserved in the Dismissal Order to the extent that a creditor was not paid in full. The terms of the structured dismissal were fair and equitable to all creditors and took precautions to prevent any prejudice that could result from dismissal. In contrast, continuing

---

[10] In noting that the Trustee is not a creditor, the Court does not mean to disparage the role of the Trustee. The Trustee in this case raised valid concerns, which were addressed in the Dismissal Order. The Trustee plays a vital role in bankruptcy cases, often assuring fairness for the process and the participants.

the bankruptcy case, or altering the terms of dismissal to require fee applications, was likely to harm the creditors by diminishing their recovery on claims.

The Court notes that it would not have granted the Motion, despite otherwise presenting fair and equitable terms, had the proposed terms reflected an attempt to circumvent the plan confirmation requirements of section 1129 through what resembled a *sub rosa* plan. This Court pays heed to the Fifth Circuit's warning in *In re Braniff Airways, Inc.* that "[a] debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets." 700 F.2d 935, 940 (5th Cir. 1983). In exercising this gate-keeping function, however, it is "incumbent upon the bankruptcy judge to effectuate the provisions of the Bankruptcy Code for the protection of creditors," in the event that the statutory provisions designed for reorganization become obtrusive. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 373 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988). The circumstances surrounding the proposed dismissal did not resemble an attempt to impose a *sub rosa* plan. The Debtor's principal asset, the Property, which was the focus of this bankruptcy case, was already sold pursuant to the Court's Sale Order at the time that the Debtor filed the Motion. The Court entered the Sale Order after all creditors were given notice and an opportunity to object. The Debtor had no incentive to circumvent the plan confirmation process and sought dismissal instead for the legitimate purpose of avoiding unnecessary administrative costs because the sale proceeds from the Property were sufficient to pay all allowed claims in full. The Trustee did not object to the dismissal itself, but rather to certain aspects of the dismissal. The Court was persuaded by the circumstances and evidence presented by the Debtor that the purpose of the Motion was to protect creditors by foregoing the burden of a

plan process that would accomplish less for creditors than what could be accomplished through the Dismissal Order.

Finally, in considering whether the structured dismissal was fair and equitable, the Court concluded that the terms complied with the absolute priority rule in section 1129(b)(2) of the Bankruptcy Code. "Settlements that skip objecting creditors in distributing estate assets raise justifiable concerns about collusion among debtors, creditors, and their attorneys and other professionals." *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173, 184 (3d Cir. 2015), *cert. granted*, 136 S. Ct. 2541 (2016). The best protection against collusion is upholding the absolute priority rule, which is satisfied here. Under the terms of the Dismissal Order, all allowed claims will be paid in full, and additional insider claims will, by consent, be paid *pro rata* only out of the remaining funds. Although these insiders potentially benefit from dismissing, as opposed to continuing the bankruptcy case, their benefit is in harmony with the gain of the other unsecured creditors and in fact, to the detriment of professionals who may have earned more fees had the case carried on.

## IV. CONCLUSION

This Court has the authority to grant a structured dismissal under sections 1112(b), 105(a), and 305(a) of the Bankruptcy Code. The structured dismissal proposed in the Motion, as modified by the Debtor's consent and reflected in the Dismissal Order, was fair and equitable, did not reflect an attempt to circumvent the requirements of plan confirmation through a *sub rosa* plan, and complied with the absolute priority rule. Entry of the Dismissal Order was in the best interest of all creditors as it avoided additional administrative costs that could only harm general unsecured creditors. This is a large case in terms of the amount of claims, which concluded successfully in less than six months, paying all creditors in full. What's not to like?

The Court also notes that the instant case was handled well, for all sides, from start to finish. Counsel for the Debtor acted promptly in the sale process, and their work was exemplary. Counsel for the petitioning creditor and the secured party collaborated to produce a result that not only got their clients paid in full, but also caused the case to be one in which all allowed claims were paid. The Trustee made valid requests regarding the dismissal, which protected the parties. This case demonstrates that in Chapter 11, sometimes cooperation is preferable to litigation.

For these reasons, the Court granted the Motion and entered the Dismissal Order.

###END OF MEMORANDUM OPINION###